Richmond.
1841. May.
1. That the children of George, Elizabeth and Obedience, bom after testator’s death and during widow’s life, as well as those in being at testator’s death, are entitled to shares.
It appeared by the commissioner’s report—1. That the testator’s son James Hamlett had four children living at the testator’s death: that his daughter Mary, wife *354 of Thomas Jeffress, had severe’children, all horn before -the testator’s death: that his daughter Patsey, wife of James Wilson, had twelve children, nine of whom were born before his death: that his daughter Nancy, wife Richard Jeffress, had six children, five born before his death, and one since born: and that the testator’s daughter Narcissa, wife of Coleman Jeffress, had severe children, all born before the testator’s death. So that the testator’s children who were residuary legatees, each and all had children, and all together thirty-two children, and two of his daughters were of that age that they, as well as the son James, might and would probably have more issue. 2. That the testator’s son George had by his wife Irucy, seven children, four of whom were born before the testator’s death, and three since born, and that Lucy, the wife, was now fifty-six years old and her youngest-child was born in 1823, and therefore, probably, past child-bearing: that his daughter Elizabeth, wife of William Averett, had seven children all born before the testator’s death: that his son Bedford, who died before the testator, left three children living at the testator’s death: and that his daughter Obedience had been twice married, first to William Major, and then to James Faulkner, and that she had eight children -of both marriages, three born before and five after the testator’s death. So that, of the testator’s grandchildren who were made residuary legatees, there were in all eighteen living at his death, and five since born; and two at least of his children, to whose children he bequeathed shares, might be expected to have more issue.
The fund in hand at the time of this report was .14,305 dollars 87 cents: of which, upon the first principle, each of the testator’s five children would get 1589 dollars 31 cents, and each of the four sets'of grandchildren the same sum to be subdivided among them respectively. Upon the second principle, the share quoted to each of the testator’s five children and each of his eighteen grandchildren born before his death, was 621 dollars 90 cents. And upon the third principle, the share quoted to each of the testator’s five children and twenty-six grandchildren born before and since his death, was 421 dollars 41 cents.
The commissioner reported that the whole fund was now 14,619 dollars 9 cents; which was divided into nine shares of 1624 dollars 34 cents each: and one share was assigned to the testator’s son James Hamlett; one to Richard Jeffress and Nancy his wife; one to Coleman Jeffress and Narcissa his wife; one to Mary Jeffress, whose husband died pending the suit; and one to James Wilson administrator of his wife Patsey who was now dead: one to the children of Elizabeth Averett, subdivided into eight parts; one to the children of Obedience Faulkner, subdivided into eight parts; one to the children of Bedford Hamlett, subdivided into three parts; and one to the children of George Hamlett, subdivided into seven parts.
*357 After the interlocutory decree was made, several depositions were taken by the plaintiffs, which were returned with the commissioner’s last report. The evidence they contained was quite vague; but it might be inferred from the depositions, collated with each other—■
The grandchildren applied by petition to this court for an appeal from the decree; Avhich Avas alloAved.
The principle is correctly stated in 2 Powell on Devises, p. 331. That where a devise or bequest is made to a person described as standing in a certain relation to the testator, and to the children of another person standing in the same relation, as to my brother A. and the children of my brother B. the legatees take per capita and not per stirpes: A. only takes a share equal to one of the children of B. though it may be conjectured that the testator had a distribution according to the statute of distributions in his mind. The court will find, on examination of the adjudged cases, that the principle has been applied to cases presenting every variety of *361 circumstances; that it has been equally applied, whether the persons whose children were made legatees, were dead or alive, or some dead and some living j and that it has never, in any instance, been controlled by a regard to the number of children which the testator’s children, brothers &c. made legatees by description of classes, had at the time, and the number of the other legatees made so by name. And the reason on which the principle is founded, is, that all the persons to whom the bequest extends, are considered as entitled to take in like manner as if they were named; and all are considered as taking directly in their own right, and none by way of representation.
This principle of construction has been so long established, and so uniformly applied, in so many cases, and those so variously circumstanced, that it has become a canon of property and ought not now to be disturbed or departed from. It was wisely established at first; but even if it was not, “ it is better the law should be certain than that every judge should speculate upon it so said lord Eldon in Sheddon v. Goodrich, 8 Ves. 497. in reference to a much more questionable doctrine than this: and many other judges have affirmed the same maxim of judicial wisdom.
All the english cases that have been cited, are open to similar commentaries. And in respect to them all, it will be found, on examination, that the courts have by no means designed to lay down any fixed inflexible rule of construction, but have adopted that construction, which, upon the circumstances, appeared most just.*
It is to be remarked, that in all the cases which have been referred to, the bequest was to take effect immediately on the testator’s death, Avhen all the legatees named, or described by classes, would be ascertained, and the aliquot parts they were each to take, would of course be also ascertained. But in this case, the division of the fund was postponed till the death or marriage of the testator’s widow: his five children named legatees Avere known, and they Avere to have their aliquot parts, Avithout regard to their numerous families, or any future increase thereof; but liis four children’s children Avho were to take as legatees, could not be known till the AvidoAv’s death. Upon the principle of a division per capita, the aliquot parts of the testator’s own children Avould be liable to continual diminution, and the aggregate shares of each of three sets of the grandchildren legatees, would be continually increasing. The testator could not have intended to give his five children such small portions of his estate, and even those small portions subject to eventual and probably great diminution.
The president announced the unanimous opinion of tbe court, that the decree should be affirmed, but the reasons of the opinion were not stated.*
Decree affirmed. The counsel went into a critical examination of the whole class of cases: but it is not necessary to report their comments on them all. See preface to Jefferson’s reports. That small volume contains Barradall’s reports of cases which depended on our own colonial laws, but not of the cases which depended on questions of law or equity common to both the mother country and the colony. Therefore, mr. Jefferson has not included the case of Tucker &c. v. Tucker's ex'ors. Tlie decree was pronounced at a very late day of the term. The president told tlie reporter, that a written opinion had. been prepared, wliich was mislaid. It has never been found. Considering the interesting question involved, its doubtfulness, and the weight ami apparent application of the authority of Bladder v. Webb and tlie other cases of that class, it is much to be regretted, that the reasons of the decision of the court are lost to the profession. The reporter learned, in conversation with the judges, that, upon the particular circumstances, they thought this testator intended a division of the subject among the legatees per stirpes, and that there was nothing in the authorities which required the court to disregard the intention in this case more than in any other cases of testamentary disposition. He inferred, that the court saw reasons to distinguish this case from those of Blackler v. Webb, Crow v. Crow, &c. not to deny, or shake, tlie authority of those adjudications.